**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| REGINA D. MILLER and SHAMISHA WALKER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> DOLLAR GENERAL CORPORATION. <br><br> Defendant. | **Civil Action No.:** <br><br><br><br> **CLASS ACTION COMPLAINT** |

Plaintiffs Regina D. Miller and Shamisha Walker, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Dollar General Corporation ("Dollar General" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**<u>NATURE OF THE ACTION</u>**

1. It is both unfair and unlawful for entities like Dollar General to impose health insurance surcharges on employees who use tobacco products without complying with the protections guaranteed under federal law. This lawsuit challenges Dollar General's practice of charging a monthly "tobacco surcharge" without providing the clear and mandatory disclosures required by the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, ERISA regulations require wellness programs that are tied to tobacco-use surcharges to inform participants of the availability of a reasonable alternative standard and to disclose that the recommendations of a participant's personal physician will be accommodated. *See* 29 C.F.R. §

1

2590.702(f)(4)(v) and 45 C.F.R. § 146.121(f)(4)(iv). Dollar General fails to provide this required notice in its benefits materials, thereby violating ERISA's anti-discrimination and fiduciary duty provisions and depriving employees of information and protections to which they are entitled under federal law.

2.      Tobacco surcharges have become increasingly common, but they are only lawful if imposed through a *compliant* "wellness program" that satisfies strict conditions established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") under ERISA. In 2014, the Departments jointly issued detailed regulations interpreting ERISA § 702, 29 U.S.C. § 1182, which prohibits discrimination in group health plans based on health status. These regulations set forth clear criteria that "*must* be satisfied" for a tobacco surcharge to fall within the safe harbor for health-contingent wellness programs. Among these requirements is the obligation to provide participants with explicit notice of the availability of a reasonable alternative standard and a statement that recommendations of a participant's personal physician will be accommodated. See 29 C.F.R. § 2590.702(f)(4)(v). Failure to include this notice renders the program noncompliant, and courts routinely defer to the agency's interpretation of its own regulatory framework when evaluating such violations. See *Auer v. Robbins*, 519 U.S. 452 (1997).

3.      The Departments' regulatory requirements are designed to ensure that wellness programs genuinely promote health and do not operate as a "subterfuge for discriminating based on a health factor." 29 C.F.R. § 2590.702(f)(4)(iii). To qualify as a compliant wellness program, employers must provide meaningful notice to participants, including a statement that a reasonable alternative standard is available and that the recommendations of the participant's personal physician will be accommodated. These notice obligations are essential: they ensure that

2

participants are aware of their rights and have a fair opportunity to avoid discriminatory surcharges. Dollar General's wellness program fails this basic test. It does not disclose that personal physician recommendations will be honored, and it withholds the tobacco surcharge even from participants who complete the cessation program unless they remain enrolled through year-end. Even then, the "reward" is issued as a lump-sum *taxable* payment—unlike the tax-advantaged, monthly premium discounts received by non-tobacco users—thereby diminishing its value and delaying its receipt. By omitting the required disclosures and structurally disadvantaging participants who complete the alternative standard, Dollar General unlawfully shifts healthcare costs onto employees without complying with ERISA's nondiscrimination rules or the regulatory framework governing wellness programs.

4. The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] Without proper oversight, wellness programs risk becoming thinly veiled revenue-generating schemes, particularly when employers impose arbitrary barriers, such as unclear requirements or lack of notice make it unnecessarily difficult for employees to avoid surcharges. The regulatory

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

framework is designed to prevent such misuse by shifting the burden to plan sponsors to demonstrate compliance once a participant challenges a discriminatory surcharge. The overarching goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and that they promote genuine health improvements rather than simply penalizing those who are least able to bear additional costs.

5.      Outcome-based programs,[2] such as smoking cessation programs, must offer a clearly defined "reasonable alternative standard" that allows "all similarly situated individuals" to avoid a surcharge if they are unable to meet the program's initial standard, such as certifying that they are tobacco-free. Critically, ERISA's implementing regulations require that plans clearly disclose the availability of a reasonable alternative standard *and* state that participants' personal physician recommendations will be accommodated.[3] These disclosures must be included in all plan materials that describe the terms of the wellness program, including the summary plan description ("SPD") and the Plan Document itself.[4] Upon information and belief, neither the SPD nor the Plan Document issued by Dollar General contains these required disclosures. Dollar General therefore violates these requirements by failing to include the mandatory language in its

---

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**"); *see also* 29 C.F.R. § 2590.702(f)(4)(v).

[4] Final Regulations, 33166 ("For ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) *are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents* (which must be provided upon request), if compliance with the wellness program affects premiums, cost sharing, or other benefits under the terms of the plan." (emphasis added)).

4

benefits communications. Compounding the issue, participants who complete the cessation program do not receive the benefit in the same manner as non-smokers. Instead of receiving monthly pre-tax premium reductions, they are issued a delayed, lump-sum payment at year-end, only if they remain actively enrolled and that payment is subject to tax withholding, reducing its value. These disadvantages, paired with Dollar General's failure to disclose participants' rights, render the program noncompliant with ERISA's wellness program regulations and reflect a broader failure of fiduciary oversight.

6.     Dollar General is not entitled to the statutory safe harbor because its wellness program fails to satisfy the mandatory regulatory requirements that *"must be satisfied"* for a premium differential based on a health factor to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Dollar General's wellness program is twofold: it fails to inform participants that their personal physician's recommendations will be accommodated, and it provides the so-called "reward" to participants who complete the alternative standard in a form that is delayed, conditional, and diminished. Specifically, Dollar General provides individuals who satisfy the alternative standard with a taxable lump-sum payment, without interest, issued only at year-end, rather than as the monthly, pre-tax premium discount received by non-smokers. As a result, participants who complete the alternative standard do not receive the same, "full reward" as those who initially meet the standard, in violation of the Final Regulations. Also, upon information and belief, Dollar General failed to include the required disclosure in **all** Plan/Benefits materials as required. These structural flaws confirm that Dollar General's program is not a compliant "program[] of health promotion," but rather a cost-shifting mechanism that fails to meet the conditions necessary to invoke ERISA's safe harbor. The tobacco surcharge it imposes is therefore unlawful and discriminatory under ERISA.

5

7. This Complaint alleges that Dollar General imposes a discriminatory and unlawful tobacco surcharge. Dollar General bears the burden of proving that its tobacco surcharge program fully complies with every regulatory requirement under ERISA and its implementing regulations, including providing clear notice and disclosure. Dollar General cannot meet this burden, and its premium differential based on nicotine use is unlawful. As a result, Dollar General's wellness program is non-compliant.

8. Plaintiffs are former employees of Dollar General who paid the unlawful premium differential to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiffs and continues to impose such a burden on those similarly situated.

9. Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Dollar General from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

**PARTIES**

10. Plaintiff Regina Miller is, and at all times mentioned herein was, an individual citizen of the State of Indiana residing in the County of Marion. Plaintiff Miller was an employee of Dollar General, who paid a premium differential in the form of increased premiums for health insurance of roughly $40 per month (roughly $480 annually) offered through Dollar General

6

during her employment. Plaintiff Miller was required to pay this tobacco surcharge to maintain health insurance under the Plan.

11. Plaintiff Shamisha Walker is, and at all times mentioned herein was, an individual citizen of the State of South Carolina residing in the County of Lawrence. Plaintiff Walker was an employee of Dollar General, who paid a premium differential in the form of increased premiums for health insurance of roughly $40 per month (roughly $480 annually) offered through Dollar General during her employment. Plaintiff Walker was required to pay this tobacco surcharge to maintain health insurance under the Plan.

12. Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

13. Dollar General is a leading national retailer with thousands of store locations across the country. It operates a chain of discount stores offering a wide range of consumer goods, including household items, food, and health-related products, and employs tens of thousands of employees. Defendant is a Tennessee corporation with its principal place of business in Goodlettsville, Tennessee. Dollar General is the sponsor of the Plan and the Plan Administrator under 29 U.S.C. § 1002(16). Dollar General employs thousands of individuals and there are over 188,000 participants in the Plan as of December 31, 2023. Dollar General's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and § 28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the

7

number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15. This Court has personal jurisdiction over Defendant because it is headquartered in this District, and Defendant has purposefully availed itself of the privilege of conducting business in Tennessee.

16. Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

## I. DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

### A. Statutory and Regulatory Requirements

17. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

18. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

8

19.     Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

20.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care Act ("ACA") and Public Health Service Act ("PHSA") in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

21.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and

9

issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden is on the employer to prove that it complied with *all* the necessary regulatory criteria and that the surcharge is non-discriminatory.

22.     Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination provisions. *See* Final Regulations, 33160 ("***these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention*** . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . ." (emphases added)).

23.     In satisfying each of the criteria, plans can ensure that wellness programs are "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* They prevent employers from using surcharges as a revenue-generating mechanism dressed up as a program of health promotion. If a program fails to meet even one of these requirements, the program does not qualify as a "program[] of health promotion" and cannot qualify under ERISA's statutory carve-out. In that case, any premium differentials imposed based on a health factor violate the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if <u>all</u> of the [] requirements are satisfied***." (emphasis added)).[5] In sum, a wellness program

---

[5] Congress codified parts of the 2006 regulations regulatory criteria when, through the Patient Protection Act ("PPA") and ACA, it amended the PHSA, and incorporated (nearly verbatim) the regulatory language into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the [PHSA] [42 U.S.C. § 300gg *et seq*.] (as amended by the [PPA and ACA]) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]"). Since

10

that fails to satisfy each criterion is not a legitimate health promotion initiative but an unlawful penalty that discriminates based on health status, in direct violation of ERISA's protections.

### B. Regulatory Criteria

24.     To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

_____

then, the Departments have, in accordance with the they were granted, updated the regulatory framework through the Final Regulations, refining and clarifying the requirements to ensure compliance with ERISA's nondiscrimination provisions and the statutory criteria established by Congress. *See* 42 U.S.C. § 300gg-4(n) ("Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section"); *see also* 45 C.F.R. § 146.121(f) (adopting identical language to § 2590.702(f)).

11

(d) Uniform availability and reasonable alternative standards: "The ***full reward*** under the outcome-based wellness program must be available to ***all similarly situated individuals***." 29 C.F.R. § 2590.702(f)(4)(iv) (emphasis added).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

25. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

26. Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

27. A requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." *Id.* (emphases added). Providing the "full

12

reward" to every participant is **_mandatory_**, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, **_the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year_**. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine **_how_** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) **_as long as . . . the individual receives the full amount of the reward_**.

Final Regulations, 33163 (emphases added).

28. The Final Regulations make clear that whether a wellness program offers a "reasonable alternative standard" depends on the totality of the circumstances. *See* 29 C.F.R. § 2590.702(f)(4)(iv)(C). Plans are not permitted to impose unreasonable burdens or barriers that frustrate access to the alternative standard.

29. For health contingent wellness programs, the Final Regulations require the notice be disclosed "in **_all_** plan materials describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C. § 300gg-4(j)(3)(E). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Thus, plans that charge their participants more and fail to provide a reasonable alternative standard or the requisite notice violate these requirements, preventing these wellness programs from

qualifying for the safe-harbor exception and establishing them as discriminatory wellness programs.

30.     Dollar General's tobacco surcharge is unlawful because it does not provide a compliant wellness program because its program fails to provide the disclosures required by the Final Regulations. As discussed, the Final Regulations provide that outcome-based wellness programs, such as those involving tobacco cessation programs, are permissible under ERISA *only if __all__ regulatory requirements are satisfied*. *See* 29 C.F.R. § 2590.702(f)(4).

## II.     DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

31.     Dollar General's tobacco surcharge program violates ERISA because it is not "program[] of health promotion or disease prevention." 29 U.S.C. § 1182(b)(2)(B). To qualify for ERISA's safe harbor under § 1182(b)(2)(B), a wellness program must satisfy all the regulatory conditions, including providing adequate and timely notice to participants of all available avenues for avoiding the surcharge. These requirements are designed to ensure that wellness programs function as genuine health initiatives rather than as financial penalties disguised as incentives.

32.     Dollar General fails to meet these requirements. Specifically, it does not inform participants that they may avoid the surcharge by obtaining a recommendation from their personal physician as an alternative to the standard smoking cessation program. As explained above, ERISA's implementing regulations require employers to clearly communicate the availability of a reasonable alternative standard and the requirement to accommodate physician recommendations in all plan materials discussing premium differentials, including the plan document and summary plan description. *See* 29 C.F.R. § 2590.702(f)(4)(v). Dollar General fails to meet these basic disclosure obligations, disqualifying its program from the safe harbor

14

33. Dollar General failed to inform participants that they could avoid the surcharge by having their personal physician make a recommendation as to an alternative to the smoking cessation program offered by Dollar General. As discussed, ERISA's implementing regulations require employers to clearly communicate the availability of a reasonable alternative standard to participants in **all** plan materials discussing premium differentials, including the plan document and SPD. Defendant failed to meet these notification requirements.

34. While a benefits guide mentions the existence of a tobacco-related surcharge and a smoking cessation program, it fails to identify any contact person or process for requesting a reasonable alternative standard. Critically, it omits any mention that a participant's personal physician can recommend an alternative, as the regulations plainly require. These omissions deprive participants of the information necessary to fully understand and exercise their rights under the Plan and under ERISA. The following shows the information provided to participants:

## Earn a Tobacco-Free[1] Premium Credit

Indicate your tobacco-use status on your HA:

- Are you tobacco-free? Receive a monthly $40 Tobacco-Free Premium Credit.
- **Need help quitting or preventing relapse?** The Better Life Tobacco Cessation Program can support you in your tobacco-free journey. Plus, if you complete[2] the program, you'll earn up to a $480 Tobacco-Free Premium Credit at year-end.[3]

  To enroll, upon completing the HA and tobacco-use attestation, join the "My Personal Tobacco Wellness Coach" activity on DGWell and schedule your first call with a coach.

[1] Tobacco products include cigarettes, pipes, cigars, and smokeless forms including chewing tobacco, snuff and dip, and electronic cigarettes.

[2] Program completion is defined as completing four (4) tobacco cessation calls with your coach (once every 45 days beginning the day you join the program).

[3] If eligible, the year-end credit will be provided as a lump-sum payment on your paycheck. You must be actively enrolled in the Medical Plan at the time of payment to receive the credit. Amount based on number of months in the Medical Plan during the year and subject to applicable tax withholdings.

15

35.     The program's structure further confirms that it does not operate as a genuine program of health promotion or disease prevention. Unlike tobacco-free participants, who receive an automatic $40 monthly reduction in their pre-tax premium contributions, participants who complete the cessation program do not receive equal treatment. Instead, they receive a ***taxable*** lump-sum payment at the end of the year, but only if they remain enrolled in the Plan at the time of payout. This delay, conditionality, and tax disadvantage diminish the value of the reward and impose a financial penalty on those who complete the alternative standard. This unequal treatment is inconsistent with the core regulatory requirement that similarly situated individuals receive "***the same, full reward***" and directly undermines the incentive structure that wellness programs are supposed to promote.

36.     Dollar General's cessation program also imposes rigid procedural hurdles that undermine its accessibility and deter participation. Participants are required to complete one coaching call every 45 days, a scheduling requirement that, while seemingly neutral, operates as an unreasonable restriction in practice. The program does not make clear whether participants who miss a call within this precise window are permanently disqualified from receiving the credit, nor does it offer flexibility to accommodate personal, medical, or scheduling conflicts. These inflexible terms make it unnecessarily difficult for participants to complete the program, defeating the purpose of offering a "reasonable alternative standard" under ERISA and further supporting the conclusion that Dollar General's program is noncompliant.

37.     The structure and administration of Dollar General's wellness program therefore not only fail to meet the disclosure requirements but also burden participants who attempt to comply with the program. Instead of being encouraged to improve their health, participants are subjected to uncertainty, delay, and financial disadvantage, discouraging participation and

16

penalizing health-related behavior. These flaws confirm that Dollar General's surcharge program is not a lawful wellness initiative, but an impermissible cost-shifting mechanism that discriminates based on health status, in violation of ERISA and its implementing regulations. Dollar General should not have imposed a premium differential without offering a compliant wellness program. It should not have structured its wellness program in a way that discourages engagement and participation. It should have provided the necessary disclosures in *all* Plan materials discussing the premium differential, and it should have ensured that participants who completed the alternative standard received the same financial benefit as those who initially met the standard, delivered in the same manner (i.e., as monthly, pre-tax premium reductions), without delay, forfeiture conditions, or diminished value due to taxation. It should have reimbursed these participants for the months during which they participated in the program, with interest. By failing to do so, Dollar General deprived participants of meaningful access to a compliant alternative and violated the "full reward" requirement established in the Final Regulations.

38.     Allowing corporate entities like Dollar General to exploit their participants and unlawfully extract millions from them under the guise of a wellness program that is, in reality, a cash grab, directly contradicts ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs to deter participation and to disguise discriminatory revenue-generating schemes as health initiatives, shifting unjust financial burdens onto employees in violation of federal law.

## III.     DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

39.     Defendant controls the administration of the tobacco-related premium differential, determining which participants are subject to the increased premium and withholding the adjusted

17

amounts directly from participants' paychecks. These amounts are not placed in a trust account for the Plan but are instead deposited into Dollar General's general accounts.

40. By retaining these funds, Dollar General profits by earning interest on the withheld premium differentials and reduces its own financial contributions to the Plan. Instead of contributing these funds to offset the costs for non-smokers or to lower premiums for all participants, Dollar General uses the money to reduce the employer's share of plan expenses. This practice constitutes self-dealing and violates ERISA's fiduciary duty requirements, which mandate that Plan assets be managed exclusively in the interest of participants and beneficiaries.

41. Defendant has fiduciary responsibilities to ensure that these funds are used to support coverage for participants' health insurance. By charging and collecting this unlawful surcharge, Defendant increased its own bottom line allowing it realize financial benefits it would not have otherwise realized without imposing these premium differentials, in violation of ERISA's fiduciary duty standards. In sum, these practices demonstrate that Defendant's wellness program is an unreasonable, revenue-generating scheme disguised as a health initiative, directly contravening ERISA's requirements and purpose.

## CLASS DEFINITION AND ALLEGATIONS

42. Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

43. Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

44. Excluded from the Class are Dollar General's officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

18

45.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

46.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

47.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

48.     **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendant's premium differential discriminates against participants based on a health status related factor;

b.  Whether Defendant offers a reasonable alternative standard by which a participant could receive the "full reward";

c.  Whether Defendant provided the proper of an alternative standard in all the plan materials describing the premium differential;

d.  Whether Defendant provided the proper disclosures related to recommendations of participants' physicians being accommodated in all the plan materials describing the premium differential;

e.  Whether Defendant's premium differential program violates ERISA;

f.  Whether Defendant breached its fiduciary duties by collecting, retaining, and earning interest on the premium differentials;

g.  Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its premium differential and wellness program to ensure compliance with ERISA and applicable regulations;

h.  The appropriate mechanisms to determine damages on a class-wide basis

49.     **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described

19

above and were charged improper and unlawful nicotine-related premium differentials. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

50. **<u>Adequacy of Representation</u>**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in health and welfare plans offered by Defendant and was harmed by Defendant's misconduct in that they were assessed unfair and discriminatory premium differential. Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

51. **<u>Superiority</u>**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single

20

proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

52.     Plaintiffs seek injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiffs and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

<u>CAUSES OF ACTION</u>

<u>COUNT I</u>
**UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE**
**(Violation of 29 U.S.C. § 1182)**

53.     Plaintiffs re-allege and incorporate herein by reference allegations 1–52 of this Complaint.

54.     Defendant imposes a tobacco-related premium differential on participants who use nicotine products without complying with the mandatory requirements of ERISA § 702. By imposing discriminatory monthly premium increases based on a health factor without satisfying the conditions required under the Final Regulations, Defendant violates 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4. These violations stem from structural deficiencies in Dollar General's wellness program, including its failure to inform participants that recommendations from their personal physician will be accommodated. Defendant also requires that participants complete a tobacco cessation call every 45 days, a rigid and unreasonable scheduling restriction that creates unnecessary barriers to program completion and risks disqualifying participants based solely on minor timing lapses beyond their control. Further, the program provides the "reward" only at the end of the year as a taxable lump sum (without interest), which is conditional on continued plan

21

enrollment, and therefore not equivalent in value to the reward provided to non-smokers. Because these restrictions are arbitrary and make it more difficult for participants to avoid the premium differential, Defendant's program is noncompliant, and Dollar General is not entitled to claim the benefit of ERISA's safe harbor for wellness programs.

55. ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition by failing to disclose that physician recommendations will be accommodated; by imposing arbitrary and time limitations on how to complete the program; and by providing a conditional, taxable lump sum (without interest) in place of a monthly premium adjustment. Defendant also failed, upon information and belief, to include the required disclosures in the SPD and Plan Document. Because Defendant seeks the protection of a regulatory safe harbor to justify an otherwise discriminatory practice, the burden rests with Defendant to demonstrate full compliance with each element of the applicable regulatory framework. See *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020 (2025) (recognizing that the burden of persuasion may shift to defendants when regulatory compliance functions as an affirmative defense). Dollar General cannot meet that burden.

56. Accordingly, Defendant's imposition of the nicotine-related premium differential violates ERISA § 702 because it fails to satisfy the requirements of the Final Regulations, including but not limited to 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4).

57. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or

22

the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's premium differential program does not satisfy several of the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiffs and Class Members are entitled to relief under ERISA § 502(a)(3).

58.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress Defendant's violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4, including but not limited to declaratory relief, restitution, and any other relief necessary to remedy Defendant's unlawful conduct, as set forth in the Prayer for Relief.

## COUNT II
### BREACH OF FIDUCIARY DUTY
### (Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)

59.     Plaintiffs re-allege and incorporate herein by reference allegations 1–52 of this Complaint.

60.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

23

61.     Rather than acting loyally and prudently in the best interest of Plan participants, Defendant administered and maintained a noncompliant nicotine-related premium differential program that violated ERISA's anti-discrimination provisions. Defendant deducted increased premiums from participants' wages but failed to include the disclosures required by law, including the statement that participants could avoid the surcharge through a reasonable alternative standard recommended by their personal physician. Further, Defendant's cessation program imposed unreasonable time restrictions for completing the cessation program that was offered. Defendant also structured the reward in a way that denied participants equivalent value, providing a taxable, lump-sum payment at the end of the year—only if the participant remained enrolled—rather than offering the same pre-tax monthly premium reduction that non-smokers received throughout the year.

62.     Each year, Defendant exercised discretionary authority and control over the management and administration of the Plan and the premium differential, making it a fiduciary under 29 U.S.C. § 1002(21)(A). This included discretion over the terms of the nicotine-related premium differential, the operation of the associated "wellness program," the drafting and dissemination of benefits materials, and the decision not to include mandatory disclosures or to provide the full reward in an equal and accessible manner.

63.     Dollar General controlled and disseminated the benefits guides and other plan materials describing the nicotine-related premium differential but failed to notify participants that a personal physician's recommendation would be accommodated, as required by 29 C.F.R. § 2590.702(f)(4)(v). It also failed to explain how to access the cessation program or identify any contact to request accommodations. Nor did it provide participants who completed the cessation program with the "full reward." Instead it offered an unreasonably restrictive cessation program,

24

with those completing that program being provided with a delayed, taxable lump-sum payment rather than the tax-favored monthly reduction received by non-smokers. Year after year, Defendant failed to periodically review the terms of its premium differential and its wellness program to ensure it complied with ERISA's nondiscrimination regulations. These acts and omissions reflect Dollar General's active and ongoing role in administering an unlawful and discriminatory program that violated ERISA. These actions reflect Dollar General's active role in administering a non-compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

64. By deducting higher premiums from participants' paychecks under a noncompliant wellness program and failing to disclose the required rights and alternatives, Dollar General breached its fiduciary duties of loyalty and prudence. It acted disloyally by implementing a discriminatory cost-shifting structure that enriched the company at the expense of its employees.

65. These breaches were not incidental. By collecting higher premiums from participants and retaining those funds in its own accounts rather than holding them in trust for the Plan or using those funds to offset the premium amounts for non-nicotine-users, Dollar General used the money to reduce its own obligation to fund the Plan. The company retained financial benefit from participants' payments without offering a compliant program or equal treatment to those who completed the cessation program. The structure of the program—which made the reward taxable, delayed, and conditional—further disadvantaged participants and prevented them from receiving equivalent benefits. This conduct violated Dollar General's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

66. Dollar General also engaged in prohibited transactions under ERISA § 406(a) by causing the Plan to engage in transactions that amounted to a direct or indirect transfer of Plan

25

assets to itself, a party in interest. 29 U.S.C. §§ 1106(a)(1)(D), 1002(14). Dollar General is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants. By collecting participant-paid surcharges and using them to offset its own financial obligations, Dollar General improperly used Plan assets for its own benefit. In doing so, Dollar General also violated ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from dealing with Plan assets in their own interest. By retaining participant-paid premium differentials without providing the required disclosures or ensuring access to the full reward Dollar General profited from its own administration of the wellness program.

67.     Defendant breached its fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants (and their beneficiaries), in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the wellness programs (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiff and the Class to incur unlawful and discriminatory premium differentials. Had Defendant discharged its fiduciary duties properly, it would have provided the required disclosures, structured the program in a reasonable manner—free from arbitrary time restrictions—to deliver the full reward in an equivalent form to all participants, ensured that any participant payments were held for the benefit of the Plan rather than the employer, and prevented participants from incurring unlawful and discriminatory charges.

26

68.     As a direct and proximate result of these fiduciary breaches, Plaintiffs and members of the Class collectively lost millions of dollars in the form of premium differentials wrongfully deducted from their paychecks, without receiving a compliant wellness program in return.

69.     Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A.  An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B.  A declaratory judgment stating that the unlawful and discriminatory premium differentials imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C.  An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory premium differentials;

D.  A declaratory judgment stating that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to adequately monitor the terms of the Plan

27

and wellness program, as well as communications with participants, to ensure it complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the premium differentials under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected premium differentials;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendant collected;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory nicotine-related premium differentials;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory premium differentials on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

28

L.   An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M.   Any other relief the Court determines is just and proper.

Dated: May 29, 2025                     Respectfully submitted,


                                        **SIRI & GLIMSTAD LLP**

                                        /s/ *R. Scott Pietrowski*

                                        R. Scott Pietrowski (Tenn. Bar. No. 019853)
                                        Oren Faircloth (*pro hac vice* forthcoming)
                                        Kimberly Dodson (*pro hac vice* forthcoming)
                                        745 Fifth Avenue, Suite 500
                                        New York, New York 10151
                                        Tel: (212) 532-1091
                                        E: spietrowski@sirillp.com
                                        E: ofaircloth@sirillp.com
                                        E: kdodson@sirillp.com

                                        *Attorneys for Plaintiffs and the Proposed Class*


29