# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

REGINA D. MILLER,

                Plaintiff,

v.

DOLLAR GENERAL CORP., *et al.*,

                Defendants.

Case No. 3:25-CV-00599

**Chief Judge William L. Campbell, Jr.**

**Magistrate Judge Barbara D. Holmes**

**DEFENDANT DOLLAR GENERAL CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S ERISA § 502(a)(2) CLAIMS AND TO COMPEL PLAINTIFF'S REMAINING CLAIMS <u>INTO INDIVIDUAL ARBITRATION</u>**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION...................................................................................................... 1

II. RELEVANT BACKGROUND................................................................................. 1

  A.  Dollar General And Its Plan.......................................................................... 1

  B.  Plaintiff's Employment And Participation In The Plan ................................. 3

  C.  Plaintiff's Arbitration Agreement With Dollar General................................ 4

  D.  Plaintiff's Claims .......................................................................................... 5

III. PLAINTIFF'S ERISA § 502(A)(2) CLAIMS SHOULD BE DISMISSED UNDER
    RULE 12(B)(6) ...................................................................................................... 6

  A.  Plaintiff's ERISA § 502(a)(2) Claims Fail Should Be Dismissed Because Plaintiff
      Does Not Plausibly Allege An Injury To The Plan ...................................... 6

  B.  Plaintiff's ERISA § 502(a)(2) Claims Fail For The Separate Reason That Plaintiff
      Has Not Plausibly Alleged Any Fiduciary Action ..................................... 11

    1.  Decisions Regarding The Structure Of The Wellness Program Are Not
        Fiduciary Actions ....................................................................... 11

    2.  Plaintiff's Conclusory Allegation Regarding "Discretionary Authority"
        Does Not Support Her ERISA § 502(a)(2) Claims ................................ 12

  C.  Plaintiff's Prohibited Transaction Claims Also Fail Because She Has Not
      Plausibly Alleged An Actionable "Transaction" Involving Plan Assets ............... 15

IV. PLAINTIFF'S ERISA § 502(A)(3) CLAIMS SHOULD BE COMPELLED INTO
    INDIVIDUAL ARBITRATION PURSUANT TO HER ARBITRATION
    AGREEMENT ...................................................................................................... 16

  A.  Plaintiff Should Be Compelled To Arbitrate Her ERISA § 502(a)(3) Claims ...... 18

    1.  The Parties Agreed To Arbitrate Plaintiff's ERISA § 502(a)(3) Claims ... 18

    2.  Congress intended for Plaintiff's ERISA claims to be arbitrable ............. 20

  B.  Arbitration Should Be Compelled On An Individual Basis................................ 20

  C.  The Lawsuit Should Be Stayed Pending Arbitration ............................................ 21

V.  CONCLUSION ..................................................................................................... 21

**Page(s)**

**Cases**

*Aldrich v. Univ. of Phoenix, Inc.*,
661 F. App'x 384 (6th Cir. 2016) ......................................................................................19

*AlixPartners, LLP v. Brewington*,
836 F.3d 543 (6th Cir. 2016) .............................................................................................20

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013).............................................................................................................17

*Amatangelo v. Nat'l Grid USA Serv. Co.*,
2011 WL 3687563 (W.D.N.Y. Aug. 23, 2011) .................................................................16

*Anderson v. Charter Commc'ns, Inc.*,
860 F. App'x 374 (6th Cir. 2021).......................................................................................21

*Andrews v. TD Ameritrade, Inc.*,
596 F. App'x 366 (6th Cir. 2014).......................................................................................17

*Arabian Motors Grp. W.L.L. v. Ford Motor Co.*,
19 F.4th 938 (6th Cir. 2021) .............................................................................................21

*Arnett v. Aetna Life Ins. Co.*,
2016 WL 6883203 (S.D. Tex. Apr. 14, 2016) ..................................................................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................................6

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)..............................................................................................................17

*Bailey v. Sedgwick Claims Mgmt. Servs. Inc.*,
2025 U.S. Dist. LEXIS 190335 (W.D. Tenn. Sep. 26, 2025).......................................9, 10, 13

*Barnett v. Perry*,
2011 WL 5825987 (D.Md. Nov. 16, 2011) .......................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................................6

*Bokma v. Performance Food Group, Inc.*,
2025 WL 1452042 (E.D. Va. May 20, 2025) .....................................................................9

*Buescher v. North American Lighting, Inc.*,
2025 WL 1927503 (C.D. Ill. June 30, 2025) ...............................................................9

*Cain v. Siemens Corp.*,
2025 WL 2172684 (D.N.J. July 31, 2025)...............................................................16

*Chirinian v. Travelors Co.*,
2025 WL 2147271 (D. Minn. July 29, 2025) .....................................................7, 9, 10

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
2017 WL 3524682 (S.D.N.Y. Aug. 15, 2017)...........................................................19

*Dorman v. Charles Schwab Corp.*,
780 F. App'x 510 (9th Cir. 2019)...............................................................................20

*Duke v. Luxottica U.S. Holdings Corp.*,
2024 WL 4904509 (E.D.N.Y. Nov. 27, 2024)......................................................17, 20

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
725 F.3d 406 (3d Cir. 2013)......................................................................................12

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018).........................................................................................20, 21

*Fifth Third Bancorp. v. Dudenhoeffer*,
573 U.S. 409 (2014)....................................................................................................6

*Fisher v. GardaWorld Cash Servs., Inc.*,
2025 WL 2484271 (W.D.N.C. Aug. 28, 2025).....................................................7, 8, 10, 16

*Foust v. Comcast Corp.*,
2020 WL 1891755 (E.D. Tenn. Jan. 28, 2020)..........................................................18

*Fusco v. Plastic Surgery Ctr., P.A.*,
2016 WL 845263 (D. Me. Mar. 4, 2016).................................................................19

*Gavette v. United Wholesale Mortg., LLC*,
2025 WL 318224 (6th Cir. Jan. 28, 2025) ...............................................................18

*Gromala v. Royal & SunAlliance*,
87 F. App'x 562 (6th Cir. 2004) ...............................................................................11

*Hamrick v. E.I. du Pont de Nemours & Co.*,
2024 WL 359240 (D. Del. Jan. 31, 2024), *R&R adopted*, 2024 WL 2817966
(D. Del. June 3, 2024)...............................................................................................14

*Hannan v. Hartford Fin'l Serv., Inc.*,
688 F. App'x 85 (2d Cir. 2017) ...............................................................................15

*In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*,
   661 F. Supp. 2d 861 (S.D. Ohio 2009) ...................................................................15

*Hughs Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)...................................................................................................11

*Hunter v. Caliber Sys., Inc.*,
   220 F.3d 702 (6th Cir. 2000) ....................................................................................11

*Hutchins v. HP Inc.*,
   767 F. Supp. 3d 912 (N.D. Cal. 2025) .....................................................................15

*Int'l Union of Painters & Allied Trades Dist. Council No. 6. v. Smith*,
   2024 WL 1012967 (S.D. Ohio Mar. 8, 2024)...........................................................14

*Keger v. Envtl. Sys. Prod., Inc.*,
   2013 WL 1343526 (N.D. Ohio Mar. 28, 2013) ........................................................12

*Laurent v. PricewaterhouseCoopers LLP*,
   C.A., 2018 WL 502239 (S.D.N.Y. Jan. 19, 2018).....................................................15

*Lockheed Corp. v. Spink*,
   517 U.S. 882 (1996)........................................................................................11, 12, 15

*Mehlberg v. Compass Group USA, Inc.*,
   2025 WL 1260700 (W.D. Mo. Apr. 15, 2025) ............................................................9

*Merritt v. Square Cap., LLC*,
   2024 WL 4183316 (W.D. Tenn. July 25, 2024) ........................................................18

*Miller v. Yazaki North Am., Inc.*,
   254 Fed. Appx. 466 (6th Cir. 2007)..........................................................................11

*Moon v. BWX Techs., Inc.*,
   577 F. App'x 224 (4th Cir. 2014) ..............................................................................12

*Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)........................................................................................................17

*Murphy v. Canadian Imperial Bank of Commerce*,
   709 F. Supp. 2d 242 (S.D.N.Y. 2010).......................................................................19

*Parker v. Tenneco, Inc.*,
   114 F.4th 786 (6th Cir. 2024) .................................................................................7, 16

*Pegram v. Herdich*,
   530 U.S. 211 (2020).....................................................................................................11

iv

*Powers v. Charles River Lab'ys, Inc.*,
 2017 WL 4324942 (E.D. Mich. Sept. 29, 2017)........................................................................17

*Rowe v. ZF N. Am., Inc.*,
 2021 WL 3036787 (N.D. Ohio July 19, 2021) ..........................................................................19

*Secretary of Labor v. Macy's, Inc.*,
 2021 WL 5359769 (S.D. Ohio Nov. 17, 2021)...........................................................................13

*Select Specialty Hosp. Akron v. Cmty. Ins. Co.*,
 2021 WL 5206558 (N.D. Ohio Nov. 9, 2021) .............................................................................2

*Simon v. Pfizer Inc.*,
 398 F.3d 765 (6th Cir. 2005) ...............................................................................................17, 20

*Sims v. First Horizon Nat. Corp.*,
 2009 WL 3241689 (W.D. Tenn. Sept. 30, 2009)........................................................................11

*Smith v. Spizzirri*,
 601 U.S. 472 (2024)...................................................................................................................21

*Stolt-Nielsen S.A. v. AnimalFeeds, Int'l Corp.*,
 559 U.S. 662 (2010)....................................................................................................................20

*Stout v. J.D. Byrider*,
 228 F.3d 709 (6th Cir. 2000) .....................................................................................................17

*VanPamel v. TRW Vehicle Safety Sys., Inc.*,
 723 F.3d 664 (6th Cir. 2013) .....................................................................................................17

*Williams v. Imhoff*,
 203 F.3d 758 (10th Cir. 2000) ...................................................................................................19

*Wise v. Verizon Comms., Inc.*,
 600 F.3d 1180 (9th Cir. 2010) .....................................................................................................7

*Wright v. Oregon Metallurgical Corp.*,
 360 F.3d 1090 (9th Cir. 2004) ...................................................................................................14

**Statutes**

9 U.S.C. § 2.................................................................................................................................17

9 U.S.C. § 3.................................................................................................................................21

9 U.S.C. § 4.................................................................................................................................17

29 U.S.C. 1081(a)(1)..................................................................................................................8, 9

ERISA § 406(a), 29 U.S.C. § 1106(a) ..............................................................................11, 13, 15

ERISA § 406(b), 29 U.S.C. § 1106(b) ....................................................................................11, 16

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) ...................................................................... *passim*

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ...................................................................... *passim*

ERISA § 502(g), 29 U.S.C. § 1132(g) .............................................................................................21

ERISA § 702 ......................................................................................................................................14

ERISA § 702(b) ...................................................................................................................................5

**Other Authorities**

29 C.F.R. § 2509.75-8..................................................................................................................12, 13

29 C.F.R. § 2510.3-102(a)(1)..............................................................................................................10

Rule 12(b)(1)...........................................................................................................................................16

Rule 12(b)(6)...................................................................................................................... *passim*

Case 3:25-cv-00599    Document 32    Filed 10/01/25    Page 7 of 30 PageID #: 1017

## I.  INTRODUCTION

This case involves the tobacco-free wellness program offered by Dollar General Corporation ("Dollar General" or "the Company") in connection with its medical benefit plan ("Plan").  The goal of Dollar General's wellness program is to incentivize participants to be tobacco-free.  To that end, the program rewards Plan participants who do not use tobacco products or who complete the free tobacco-free wellness program with a $40 per month reduction in the Plan's premiums.

Plaintiff Regina Miller is a former Plan participant and a tobacco user.  Plaintiff claims that the wellness program discriminated against her based on a health status factor in violation of ERISA because she did not receive the monthly premium credit received by non-tobacco users and tobacco users who complete the free tobacco cessation program.  Plaintiff's Amended Complaint asserts two types of claims: (1) claims brought under ERISA § 502(a)(2) "on a representative basis on behalf of the Plan"; and (2) claims brought under ERISA § 502(a)(3) on a non-representative basis.  Am. Compl. [ECF No. 30] at ¶¶ 64-65, 77.

Plaintiff's ERISA § 502(a)(2) claims should be dismissed pursuant to Rule 12(b)(6) for several reasons, including that Plaintiff failed to plausibly allege any harm to the Plan or any fiduciary conduct.  Plaintiff's remaining claims, all of which arise under ERISA § 502(a)(3), should be compelled into individual arbitration pursuant to the Arbitration Agreement that Plaintiff entered into with Dollar General.

## II.  RELEVANT BACKGROUND

### A.  Dollar General And Its Plan

Dollar General is a leading national retailer which "operates a chain of discount stores offering a wide range of consumer goods."  Am. Compl. at ¶ 11.  Dollar General employs "tens of thousands" of individuals and offers eligible employees the opportunity to participate in its medical

1

benefit plan. *Id.* at ¶¶ 8-11. Dollar General's Plan includes a wellness program that is designed to encourage participants to be tobacco-free.

The terms of the Dollar General's wellness program are set forth in, and communicated through, the Summary Plan Descriptions ("SPDs")[1] provided to participants. For example, the 2021 SPD describes the Better Life Wellness Program as follows:

> The Better Life Wellness Program is a voluntary program designed to encourage Covered Employees and Spouses to take steps to improve their overall health by providing helpful resources and programs to address areas of concern that can lead to serious health complications.
>
> **Reasonable Alternative Standard**:
>
> The Plan is committed to helping Covered Employees achieve their best health. Rewards for participating in the Better Life Wellness Program are available to all Plan participants. If You think You might be unable to meet a standard for a reward under the Better Life Wellness Program, You might be able to earn the same reward by different means. If the activity or goal requires You to attain or maintain a specific health outcome, the Better Life Wellness Program will work with You (and, if You wish, with Your doctor) to find an activity or goal with the same reward that is right for You in light of Your health status. If the activity or goal does not require You to attain or maintain a specific health outcome, the Better Life Wellness Program will provide You with an alternative if it is unreasonably difficult due to a medical condition or medically inadvisable for You to attempt to satisfy the activity or goal. Contact us at 1-800-521-9919, option 3, then option 1 for more information.
>
> …
>
> **Tobacco-Free Tobacco Cessation Program**
>
> The Better Life Tobacco Cessation Program is available to Covered Employees who are tobacco (cigarettes, cigars, pipes, smokeless tobacco and e-cigarettes) users and wish to stop using tobacco. Participants in the Better Life Tobacco Cessation Program can receive covered nicotine replacement aids at no cost. All Covered Employees who do not use tobacco will receive a $40 monthly Tobacco-Free Premium Credit on Plan premiums. Employees who complete the Tobacco

---

[1] The SPDs can be considered for purposes of this Motion because they are referenced in the Amended Complaint. *See, e.g., Select Specialty Hosp. Akron v. Cmty. Ins. Co.*, 2021 WL 5206558, at *2 (N.D. Ohio Nov. 9, 2021) (a "[r]eference to an ERISA 'plan' in the complaint 'is sufficient reference to the plan documents'" to allow the court to consider the plan attached to defendant's motion to dismiss; court held that plaintiff's claims were time barred based on the terms of the plan) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997)).

2

Cessation Program will receive the year-end Tobacco-Free Premium Credit of up to $480.*

To receive the Tobacco-Free Premium Credit, the Covered Employee must complete a Health Assessment and designate his or her tobacco use status and, if a tobacco user, attest to willingness to enroll in a Tobacco Cessation Program. Covered Employees have 45 days to complete their Health Assessment from the date of enrollment.

Employees that select to participate in the program must then join the "My Personal Tobacco Wellness Coach" Activity on the DGWell platform, and schedule a call with a Wellness Coach to begin the program. Program completion is defin[ed] as completing four (4) calls with a Wellness Coach (once every 45 days beginning the day the employee enrolls in the program). Failure to complete the program will result in loss of eligibility for the year-end Tobacco-Free Premium Credit.

* The year-end credit will be provided as a lump-sum payment through payroll refund. You must be: (i) an active participant or have completed the program; (ii) actively enrolled in the health Plan at the time of payment to receive the credit. The credit amount may be pro-rated based on the number of months enrolled in the Plan during the year and will be subject to applicable tax withholdings.

*See* Decl. of M. Latham [ECF No. 21-1] at Ex. 3, 2021 SPD at pp. 9-10).[2]

### B.     Plaintiff's Employment And Participation In The Plan

During the course of her employment with Dollar General, Plaintiff was eligible to participate in the Plan and elected to do so. Am. Compl. at ¶¶ 9-10. Plaintiff used tobacco products while employed with Dollar General and did not enroll in the tobacco cessation program (or request a waiver of the expected standard of being tobacco-free). As such, Plaintiff did not receive the monthly $40 medical premium credit provided to non-tobacco users (or as Plaintiff describes it, she was required to pay a $40 monthly "tobacco surcharge"). *Id.* at ¶ 9.

---

[2]     The SPDs for 2019-2025 contain similar descriptions of the tobacco-free wellness program. The most notable difference between the tobacco cessation programs between 2019 and 2025 is the discussion of the coaching call requirements. The SPD for 2019 does not reference any coaching calls, the SPDs for 2020-2022 discuss a requirement of four calls with a coach (one every 45 days), and the SPDs for 2023-2025 discuss a requirement that participants attend five calls with a coach within the relevant time period. *Compare id.* at Exs. 1-4 (SPDs for 2019-2022) *with* Exs. 4-7 (SPDs for 2023-2025).

### C. Plaintiff's Arbitration Agreement With Dollar General

In connection with her employment, Plaintiff and Dollar General entered into a mutually binding Arbitration Agreement. *See* Ex. 1, Decl. of D. Roach at Ex. B, 12/9/23 Arbitration Agreement[3] at 1 (explaining that Dollar General "has a process for resolving employment related legal disputes with employees that involves binding arbitration" and that the Arbitration Agreement "describes that process and constitutes a mutually binding agreement between you and Dollar General").

In the Arbitration Agreement, Plaintiff agreed that "any legal claims or disputes that [she] may have against Dollar General…., [its] employees, officers and directors arising out of [her] employment with Dollar General or termination of employment with Dollar General ('Covered Claim' or 'Covered Claims') will be addressed in the manner described in this Agreement." *See id.* The Arbitration Agreement specifically defines "Covered Claims" to include "claims alleging violation of any … federal laws."[4] Dollar General also agreed that any "Covered Claims" that it "may have against [Plaintiff] related to [her] employment will be addressed in the manner described in this Agreement. *Id.*

The Arbitration Agreement, which is governed by the Federal Arbitration Act ("FAA"), provides that all "Covered Claims" shall be settled by binding arbitration "conducted in accordance with the terms set forth in this Agreement and the Employment Arbitration Rules of AAA [the American Arbitration Association], except as superseded by the terms of this Agreement." *Id.* It

---

[3] Plaintiff was employed by Dollar General on several occasions. As a result, she has entered into two Arbitration Agreements with Dollar General. *See* Ex. 1, Decl. of D. Roach, at ¶¶ 4-7 and Exs. A-B, thereto. The first Arbitration Agreement was entered into on December 4, 2018 and the second one was entered into on December 9, 2023. The terms of the Arbitration Agreements are the same. *Id.*

[4] There are limited exceptions to the definition of "Covered Claims" which are not applicable here. *See id.*

also provides that the "procedures in this Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, whether brought by [Plaintiff] or Dollar General." *Id.*

In addition to requiring that "Covered Claims" be arbitrated, the Arbitration Agreement precludes Plaintiff and Dollar General from asserting any class action, collective action, or representative action claims against each other in arbitration:

> **Class and Collective Action Waiver: You and Dollar General may not assert any class action, collective action, or representative action claims in any arbitration pursuant to this Agreement …**

*Id.* (emphasis original).

### D. Plaintiff's Claims

Plaintiff admits that she used tobacco products while she was a Plan participant and did not participate in the free tobacco cessation program. Nevertheless, Plaintiff asserts that Dollar General's and the Benefits Administration Committee's[5] failure to reward her the $40 monthly premium credit received by participants who did not use tobacco products or who completed the free tobacco cessation program violated ERISA. In particular, Plaintiff alleges in Count I that the tobacco-free wellness program violates ERISA § 702(b) because: (1) the free tobacco cessation program provided to participants was allegedly not a reasonable alternative standard to being tobacco-free because it allegedly imposed arbitrary enrollment and completion deadlines that allegedly restricted access to the program; (2) it failed to notify participants in the Benefits Guide that the recommendations of their personal physician would be accommodated (although this information was disclosed in the SPDs); and (3) it allegedly denied participants the opportunity to

---

[5] Plaintiff added the Benefits Administration Committee (the "Committee") as a defendant in her Amended Complaint. To the best of Dollar General's knowledge, the Committee has not been served with process as of the date of this Motion and, therefore, is not yet a party to this litigation.

receive the "full reward" for adhering to the wellness program because reimbursement of the tobacco surcharges is delayed until the end of the year and on a post-tax and interest-free basis. Am. Compl. at ¶¶ 34-42, 61-63.  Plaintiff brings her Count I claims pursuant to ERISA § 502(a)(3). *Id*. at ¶ 65.

Plaintiff relies on these same allegations to support her Count II claims for breach of fiduciary duty and violations of ERISA's prohibited transaction rules.  *Id*. at ¶¶ 66-77.  Plaintiff brings her Count II claims on behalf of the Plan as a whole pursuant to ERISA § 502(a)(2).  *Id*. at ¶ 77.  Alternatively, Plaintiff brings these claims pursuant to ERISA § 502(a)(3).  *Id*.

### III.  PLAINTIFF'S ERISA § 502(A)(2) CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6)

To avoid dismissal on a Rule 12(b)(6) motion, a complaint must plead sufficient non-conclusory factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While well-pled allegations are accepted as true for purposes of a motion to dismiss, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Supreme Court has recognized that motions to dismiss are an "important mechanism for weeding out meritless claims," particularly, class actions brought under ERISA.  *Fifth Third Bancorp. v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  As shown below, Plaintiff has failed to state an ERISA § 502(a)(2) claim for breach of fiduciary duty or for violations of ERISA's prohibited transaction rules.  As such, Plaintiff's ERISA § 502(a)(2) claims should be dismissed.

### A.  Plaintiff's ERISA § 502(a)(2) Claims Should Be Dismissed Because Plaintiff Does Not Plausibly Allege An Injury To The Plan

Plaintiff alleges that Defendants' alleged fiduciary breaches and prohibited transactions resulted in the unlawful "withholding [of] millions of dollars in tobacco surcharges ***from participants' paychecks***."  Am. Compl. at ¶ 68 (emphasis added); *see also id.* at ¶ 42 (alleging that

the program resulted in "employees paying surcharges they could have avoided"); *id.* at ¶ 43 (alleging that Defendants "unlawfully extract millions from [participants] under the guise of a wellness program"); *id*. at ¶ 44 (alleging the "withholding [of] the surcharge directly from participants' paychecks"). These alleged harms are individual harm and not harm to the Plan as a whole. Allegations of individual harm — as opposed to Plan-wide harm — are insufficient to state a prohibited transaction or fiduciary breach claim under ERISA § 502(a)(2). *See, e.g., Parker v. Tenneco, Inc*., 114 F.4th 786, 794–95 (6th Cir. 2024), *cert. denied*, 2025 WL 76490 (U.S. Jan. 13, 2025) (holding that ERISA "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries") (quoting *LaRue v. DeWolff, Boberg & Ass., Inc.*, 552 U.S. 248, 256 (2008)); *Wise v. Verizon Comms., Inc.*, 600 F.3d 1180, 1189 (9th Cir. 2010) (an action brought under ERISA § 502(a)(2) "gives a remedy for injuries to the ERISA plan as a whole, but not for injuries suffered by individual participants as a result of a fiduciary breach").

Consistent with the foregoing, the United States District Court for the District of Minnesota held that the allegation that participants "lost millions of dollars in the form of unlawful wellness penalties for tobacco use that were withheld from their paycheck … only alleges 'individual injuries distinct from plan injuries,'" which cannot support a[n] ERISA § 502(a)(2), [29 U.S.C. §] 1132(a)(2) claim." *Chirinian v. Travelors Co.*, 2025 WL 2147271, *11 (D. Minn. July 29, 2025) (citing *LaRue*, 552 U.S. at 256). The United States District Court for the Western District of North Carolina also recently found that the withholding of tobacco surcharges from participants' paychecks does not plausibly allege harm to the plan as required by ERISA § 502(a)(2). *Fisher v. GardaWorld Cash Servs., Inc*., 2025 WL 2484271, *7-8 (W.D.N.C. Aug. 28, 2025) (dismissing ERISA § 502(a)(2) claims because the allegedly unlawful tobacco surcharges "are all allegations of harm to individual Plan participants, not the Plan itself").

Plaintiff's remaining allegations of harm fare no better as they do not allege harm to the Plan itself.  As recognized in *Fisher*, this includes Plaintiff's allegations regarding the failure "to pay individual participants the full reward …; fail[ure] to properly disclose material information about the wellness programs to participants and administering a Plan that did not conform to ERISA's anti-discrimination requirements [as these] are all allegations of harm to individual Plan participants, not the Plan itself." *Fisher*, 2025 WL 2484271, at *8 (internal quotations omitted).

The fact that Dollar General allegedly used the collected tobacco surcharges to offset its own contributions to the Plan does not change this analysis.  Dollar General's use of surcharges to allegedly offset "its own costs, without more, does not mean the Plan suffered any harm." *Id.* at *7 (explaining that the company's benefit from a reduced financial obligation to the Plan due to the collection of surcharges "is irrelevant to whether the Plan experienced a loss").  The Plan has no interest in who pays its claims and expenses; it only cares about the claims and expenses being paid.  Here, there is no allegation that any medical or benefit claim that was made under the terms of the Plan went unpaid or that any Plan expense went unpaid.  As such, the Plan could not have been harmed by the collection of any surcharge.[6]

---

[6]     Plaintiff's additional conclusory allegations, including the allegations that the Plan was deprived "of assets it should have received" and the "Plan bore increased costs" (Am. Compl. at ¶¶ 72, 76), can and should be ignored as they are not supported by any factual allegations (*i.e.*, that any claims or Plan expenses went unpaid).   Plaintiff's allegation that Dollar General's handling of the surcharges left "the Plan underfunded compared to what it should have received under its governing documents" and otherwise "diminished the Plan's funding stream" (*id.* at ¶¶ 46, 74) should also be disregarded because it is based on a flawed premise, *i.e.*, that the Plan failed to receive everything it was entitled to receive from Dollar General.  Employee welfare benefit plans are not operated the same as other benefit plans (such as a 401(k) plan) and are exempt from ERISA's funding rules. 29 U.S.C. § 1081(a)(1).  Because ERISA's funding rules do not apply to welfare plans, sponsors of welfare plans can "self-fund" their health care plans by paying covered benefits out of operating capital on an "as-you-go basis." *See* Donald T. Bogan, *The Silliness of ERISA: The Plan Is Not the Only Proper Party Defendant in an ERISA Benefits Claim*, 16 Marq. Benefits & Soc. Welfare L. Rev. 395, 401–02 (2015).  It is simply wrong for Plaintiff to suggest

The lack of harm to the Plan is confirmed by Plaintiff's own allegations. According to the factual allegations made in the Amended Complaint, Dollar General elected to subsidize the monthly premium paid by non-tobacco users by providing them with a $40 per month premium discount. *Id.* at ¶ 44. Thus, far from resulting in a "windfall to Defendant" which "deprive[d] the Plan of the full funding it should have received" (*id*. at ¶ 48), Plaintif's own allegations indicate that Dollar General contributed ***more*** to the Plan than it otherwise would have contributed in the absence of the tobacco-free wellness program. As acknowledged in *Chirinian*: "in [Plaintiff's] ideal world, more Plan participants would have avoided the tobacco surcharge, meaning the Plan would have collected ***less*** money from [these] Plan participants. That indicates that [Defendant] engaged in conduct at the expense of individuals, not the Plan." *Chirinian*, 2025 WL 2147271, at *12. "[E]ven if collecting less money from Plan participants meant that [Dollar General] would have to contribute more to the Plan, from a balance-sheet perspective, the Plan is no worse off." *Id.* (dismissing the plaintiff's ERISA § 502(a)(2) claims where the plaintiff's challenge to the tobacco-free wellness program alleged "individual losses, not plan-wide losses").

Plaintiff will undoubtedly argue that this Court should reject the reasoning of the *Chirinian* and *Fisher* decisions and find that she has sufficiently alleged harm to the Plan. To support her argument, Plaintiff is expected to rely upon the following decisions: *Bokma v. Performance Food Group, Inc*., 2025 WL 1452042 (E.D. Va. May 20, 2025), *Mehlberg v. Compass Group USA, Inc*., 2025 WL 1260700 (W.D. Mo. Apr. 15, 2025), *Buescher v. North American Lighting, Inc*., 2025 WL 1927503, *27, n.18 (C.D. Ill. June 30, 2025), and *Bailey v. Sedgwick Claims Mgmt. Servs. Inc*., 2025 U.S. Dist. LEXIS 190335 (W.D. Tenn. Sep. 26, 2025). The Court should reject

---

that Dollar General's retention of the surcharges in any way "diminished the Plan's funding stream" or somehow left the Plan "underfunded." Am. Compl. at ¶¶ 46, 74.

9

Plaintiff's argument as none of these decisions explain how the withholding of surcharges from a participant's paycheck plausibly alleges a "harm to the entire plan" (as opposed to harm to the individual participant).[7]

The *Bailey* decision is also inapposite because it apparently treated the surcharges withheld from the participants' paychecks as plan assets. *Bailey*, 2025 U.S. Dist. LEXIS 190335, at *43-44, 57-58. However, surcharges withheld from a participant's paycheck "do not become Plan assets until 'the earliest date on which [they] can reasonably be segregated from the employer's general assets.'" *Fisher*, 2025 WL 2484271, at *8 (citing *Phelps v. CT Enterp.*, 194 F.App'x. 120, 124 (4th Cir. 2005) (explaining that employee contributions under an employee welfare benefit plan become Plan assets not later than 90 days from collection); 29 C.F.R. § 2510.3-102(a)(1) (explaining that the assets of the plan do not include amounts that a participant has withheld from his wages by an employer for contribution to the plan until "the earliest date on which such contributions … can reasonably be segregated from the employer's general assets").

Here, Plaintiff does not allege that Dollar General retained the surcharges beyond 90 days. As such, Plaintiff has not alleged the facts necessary to support an allegation that the withheld surcharges were Plan assets. Because Plaintiff has not alleged that Dollar General dealt with Plan assets for its own benefit (and, thus, to the detriment of the Plan), she has failed to allege the requisite harm to the Plan.

Plaintiff's failure to allege any losses to the Plan as a whole is fatal to her ERISA § 502(a)(2) breach of fiduciary duty and prohibited transaction claims. As such, these claims should be dismissed pursuant to Rule 12(b)(6). *See id.*

---

[7]     Not surprisingly, the court in *Chirinian* found the *Bokma* decision to be unpersuasive. *Chirinian,* 2025 WL 2147271, at *11-12.

**B. Plaintiff's ERISA § 502(a)(2) Claims Fail For The Separate Reason That Plaintiff Has Not Plausibly Alleged Any Fiduciary Action**

Both breach of fiduciary duty and prohibited transaction claims require that the challenged action involve fiduciary action. *See Pegram v. Herdich,* 530 U.S. 211, 226 (2020) ("[i]n every case charging breach of ERISA fiduciary duty…the threshold question is…whether [the defendant] was acting as a fiduciary…when taking the action subject to complaint."); 29 U.S.C. § 1106(a) ("A fiduciary with respect to a plan shall not …"); 29 U.S.C. § 1106(b) ("A fiduciary with respect to a plan shall not …"); *Miller v. Yazaki North Am., Inc.*, 254 Fed. Appx. 466, 468–69 (6th Cir. 2007); *Gromala v. Royal & SunAlliance*, 87 F. App'x 562, 564 (6th Cir. 2004). As shown below, Plaintiff has failed to plausibly allege that the creation and implementation of the tobacco-free wellness program involved any fiduciary action. As such, these claims should be dismissed pursuant to Rule 12(b)(6).

**1. *Decisions Regarding The Structure Of The Wellness Program Are Not Fiduciary Actions***

It is well-established that designing a plan and determining what benefits will be provided by the plan are not fiduciary decisions governed by ERISA. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *Hughs Aircraft Co. v. Jacobson,* 525 U.S. 432, 443 (1999); *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 723 (6th Cir. 2000) (holding that matters of "plan design" are not fiduciary functions); *Sims v. First Horizon Nat. Corp.*, 2009 WL 3241689, *22 (W.D. Tenn. Sept. 30, 2009) (dismissing fiduciary duty claim that challenged plan design). Yet, Plaintiff claims that these very actions support her breach of fiduciary duty and prohibited transaction claims. For example, Plaintiff alleges that: (1) "Defendants *structure[d]* the 'reward' in a way that disadvantages participants who complete the alternative standard"; (2) the wellness program's "*structural* defects demonstrate that Defendants' program is not a compliant 'program[] of health promotion and disease prevention'"; (3) "Defendants manipulated the Plan's funding *structure* to realize savings

11

for Dollar General"; and (4) "[b]y ***structuring*** contributions in this way, Dollar General engaged in prohibited self-dealing."  Am. Compl. at ¶¶ 6, 46, 48, 72 (emphasis added); *see also id.* at ¶ 70 (describing the wellness program as "structurally defective").  Such attacks on plan design cannot support a breach of fiduciary duty or prohibited transaction claim as a matter of law.  *See Lockheed Corp.*, 517 U.S. at 890.

### 2. *Plaintiff's Conclusory Allegation Regarding "Discretionary Authority" Does Not Support Her ERISA § 502(a)(2) Claims*

Plaintiff alleges that Defendants are liable under ERISA § 502(a)(2) because they "exercised discretionary authority and control over the management and administration of the Plan" and the tobacco-free wellness program.  Am. Compl. at ¶ 69.  The Amended Complaint, however, lacks any factual allegations to support Plaintiff's conclusory assertion.  For example, Plaintiff fails to allege that the Plan provided either Defendant with any fiduciary discretion as to: (1) whether to collect surcharges from tobacco users; (2) the amount of the tobacco surcharge to be charged to tobacco users; or (3) (4) the nature of the reward or the form of payment of the reward provided to participants.  This lack of discretion precludes any finding that Defendants were acting in a fiduciary capacity with respect to the administration of the Plan.[8]

---

[8]     To the extent that Plaintiff is arguing that the collection of surcharges and/or withholding of premiums are themselves fiduciary actions, this argument should be rejected given the plethora of authority confirming such actions are non-fiduciary, ministerial functions.  *See, e.g.*, 29 C.F.R. § 2509.75-8 (Question D-2) (identifying the "[c]ollection of contributions and application of contributions as provided in the plan" as a ministerial function and explaining that "a person who performs purely ministerial functions is not a fiduciary"); *Keger v. Envtl. Sys. Prod., Inc.,* 2013 WL 1343526, *5 (N.D. Ohio Mar. 28, 2013) (withholding of premiums is a ministerial function); *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 422 (3d Cir. 2013) (holding that "persons who perform purely ministerial tasks, such as claims processing and calculation, cannot be fiduciaries because they do not have discretionary roles"); *Moon v. BWX Techs., Inc*., 577 F. App'x 224, 231 (4th Cir. 2014) (holding that acceptance of premium payments was not a fiduciary function); *Arnett v. Aetna Life Ins. Co*., 2016 WL 6883203, *3 (S.D. Tex. Apr. 14, 2016) (withholding premiums from a check is a ministerial function and does not give rise to a breach of fiduciary duty claim).

12

This leaves Plaintiff with the allegation that mere implementation of the Plan violates Defendants' fiduciary duties. This allegation is insufficient to survive a Rule 12(b)(6) motion. *See Bailey*, 2025 U.S. Dist. LEXIS 190335, at *51, n.12 (explaining that "the allegation that [the company] violated fiduciary duties when it 'administered a Plan that does not conform with ERISA's antidiscrimination provisions, in violation of ERISA § 406, 29 U.S.C. § 1106(a)(1)(D)' does not plausibly state a claim for breach of fiduciary duty"); *Secretary of Labor v. Macy's, Inc.*, 2021 WL 5359769, *18 (S.D. Ohio Nov. 17, 2021) (holding that the company was not acting as a fiduciary when it made the "decision to charge a Tobacco Surcharge for individuals who neither refrained from using tobacco products nor completed a reasonable alternative").

The United States District Court for the Southern District of Ohio was confronted with a case involving similar allegations as those asserted here and found that those allegations failed to state a viable claim for breach of fiduciary duty against the employer. *See id.* at *18-19. In support of its decision, the court held that:

> the distinction between creation (a settlor function) and implementation (a fiduciary function) is illusory where the Secretary alleges only that a discriminatory wellness program was implemented as created…the Secretary [of Labor]'s only apparent allegation about implementation is that Macy's implemented a discriminatory wellness program *in accordance with* the impermissibly discriminatory terms it established when it created the program. This is not enough to make Macy's a fiduciary rather than a settlor with respect to the conduct of which the Secretary complains.

*Id.* at *18 (emphasis in original).[9]

---

[9] The *Bailey* decision does not hold otherwise or disagree with the reasoning in *Macy's*. In *Bailey*, the court found that "Plaintiff alleges that Sedgwick exercised discretion over the 'management or disposition of *[Plan] assets*' by choosing to commingle those assets for its own benefit. This allegation differentiates Sedgwick's conduct from the ministerial conduct listed at 29 C.F.R. § 2509.75-8 and goes beyond the mere creation and implementation of a plan that the *Macy's* court found to be insufficient." 2025 U.S. Dist. LEXIS 190335, at *52 (emphasis added). Like *Macy's*, and unlike *Bailey*, Plaintiff has not pled the facts necessary to support an allegation that Dollar General had discretion over "Plan assets." As such, there is no allegation sufficient to

Plaintiff has failed to allege the facts necessary to support a plausible inference that the Company was acting as a fiduciary when it created the tobacco-free wellness program or that any Defendant exercised any fiduciary discretion when implementing the program in accordance with its terms. Accordingly, Plaintiff's breach of fiduciary duty and prohibited transaction claims should be dismissed pursuant to Rule 12(b)(6).[10] *See, e.g., id.* at *19 (dismissing the Secretary's breach of fiduciary duty claims against the employer pursuant to Rule 12(b)(6) due to the lack of factual allegations supporting a claim that the employer was acting as a fiduciary when it implemented its tobacco free wellness program in accordance with the plan's terms); *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (holding that "[because defendants' action with respect to plan assets] was merely a lawful decision to remain in full compliance with the explicit language of the Plan's terms ... [p]laintiffs … fail to state a claim for violation of [29 U.S.C.] § 1106 based on the Plan fiduciaries' decision to adhere to the Plan's terms"); *Int'l Union of Painters & Allied Trades Dist. Council No. 6. v. Smith*, 2024 WL 1012967, *13 (S.D. Ohio Mar. 8, 2024) (holding that enforcement of a flawed plan, without more, is not enough to allege a breach of fiduciary duty); *Barnett v. Perry*, 2011 WL 5825987, *5 (D. Md. Nov. 16, 2011) (finding that plaintiffs failed to state a proper breach of fiduciary duty claim under ERISA § 409, 29 U.S.C. § 1109, as evidenced by the "remedies [sought]—retroactive reinstatement to the Plan and reimbursement for their costs—[remedies that] would benefit only the [plaintiffs], not the Plan's beneficiaries as a whole"); *Hamrick v. E.I. du Pont de Nemours & Co.*, 2024 WL 359240, at *5 (D. Del. Jan. 31, 2024), *R&R adopted*, 2024 WL 2817966 (D. Del.

---

support a plausible inference that Dollar General acted as a fiduciary with respect to the tobacco-free wellness program.

[10]     This is not to say that there is no cause of action for an illegally-designed wellness plan. However, the cause of action would be for a violation of ERISA § 702, which is remedied through ERISA § 502(a)(3). In Count I, Plaintiff asserts an ERISA § 702 claim through ERISA § 502(a)(3).

June 3, 2024) (holding that "fiduciaries do not breach their duties under ERISA merely by administering a[n ERISA] plan according to its written terms"); *Laurent v. PricewaterhouseCoopers LLP*, C.A., 2018 WL 502239, *3 (S.D.N.Y. Jan. 19, 2018) ("The Court disagrees with the notion that ERISA imposes a general fiduciary duty on a plan administrator to comply with each and every provision in the statute.").

> **C.    Plaintiff's Prohibited Transaction Claims Also Fail Because She Has Not Plausibly Alleged An Actionable "Transaction" Involving Plan Assets**

Plaintiff's prohibited transaction claims under ERISA §§ 406(a)(1)(D) and (b) should be dismissed for the separate reason that Plaintiff has failed to plead the existence of an actionable "transaction" involving Plan assets.  *See Lockheed Corp.,* 517 U.S. at 888, 892 (explaining that ERISA § 406, 29 U.S.C. § 1106, was enacted "to bar categorically a transaction that [is] likely to injure the pension plan" and finding that administering an ERISA plan in accordance with the terms of the plan "is wholly outside the scope of [ERISA] § 406(a)(1)(D)," 29 U.S.C. § 1106(a)(1)(D)); *In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 868 (S.D. Ohio 2009) ("to establish a violation of ERISA Section 406(b), [29 U.S.C. § 1106(b)], Plaintiffs must prove that these defendants engaged in a 'transaction' prohibited by that section while acting in a fiduciary capacity"); *Hutchins v. HP Inc.,* 767 F. Supp. 3d 912, 928 (N.D. Cal. 2025) (rejecting argument that 29 U.S.C. § 1106(b)(1) does not require a "transaction").

Plaintiff alleges that the "benefits under the Plan are funded by 'contributions from Dollar General Corporation and from participating employees through salary reduction.'"  Am. Compl. at ¶ 45.  An employer's use of collected premiums to cover plan expenses is not a "transaction" for purposes of ERISA's prohibited transaction rules.  *See, e.g., Hannan v. Hartford Fin'l Serv., Inc.*, 688 F. App'x 85, 90-91 (2d Cir. 2017) (concluding that the complaint failed to state a viable prohibited transaction claim because the employer's "use of cost-reduction strategies to minimize

its cost of providing employees [plan benefits] does not constitute a transfer for its own benefit or self-dealing in its own interest"); *Amatangelo v. Nat'l Grid USA Serv. Co.*, 2011 WL 3687563, at *7 (W.D.N.Y. Aug. 23, 2011) (no prohibited transaction where the employer used employee contributions to pay premiums for plan benefits). This is true even if the use of those premiums saves the employer "millions of dollars in contribution costs." *Cain v. Siemens Corp.*, 2025 WL 2172684, at *5 (D.N.J. July 31, 2025) (finding that an allegation that "Defendant engaged in self-dealing by using Forfeitures 'as a substitute for [its] own contributions owing to the Plan, thereby saving [it] millions of dollars in contribution costs'" did not state a viable self-dealing prohibited transaction claim).

Plaintiff's ERISA § 406(b)(1) self-dealing claim fails for the separate reason that Plaintiff has not plead sufficient facts supporting her conclusory allegation that the surcharges withheld from Plaintiff's paycheck were Plan assets. Because Plaintiff has not alleged the facts necessary to support an allegation that Dollar General dealt with Plan assets for its own benefit in violation of ERISA § 406(b)(1), this claim should be dismissed. *Fisher*, 2025 WL 2484271, at *8 (dismissing plaintiffs' ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), self-dealing prohibited transaction claim where plaintiffs failed to allege that the company retained the surcharges withheld from their paychecks beyond 90 days).

## IV.   PLAINTIFF'S ERISA § 502(A)(3) CLAIMS SHOULD BE COMPELLED INTO INDIVIDUAL ARBITRATION PURSUANT TO HER ARBITRATION AGREEMENT[11]

Under the FAA, "[a] written provision . . . evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be

---

[11]   Courts in the Sixth Circuit are split on whether a motion to dismiss based on an arbitration agreement should be brought under Rule 12(b)(1) or Rule 12(b)(6). *Parker*, 114 F.4th at 791 n.5 (declining to decide whether Rule 12(b)(1) or 12(b)(6) applies when evaluating a motion to compel arbitration). With that said, and regardless of which procedural rule is invoked, "it is beyond

valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where, as here, there is an arbitration provision with which one party fails or refuses to comply, the other may petition a court for "an order directing that such arbitration proceed in the manner provided in such agreement." *Id.* at § 4. If the claims asserted in court are subject to arbitration, "the court shall make an order directing the parties to proceed to arbitration." *Id.*

Federal policy creates a strong presumption in favor of arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses J. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("courts must rigorously enforce arbitration agreements according to their terms"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) (it is "beyond dispute that the FAA was designed to promote arbitration"); *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "This strong policy favoring arbitration 'holds true for claims that allege a violation of a federal statute,'" including claims brought under ERISA § 502(a)(3). *See Italian Colors Rest.*, 570 U.S. at 233*; VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 669 (6th Cir. 2013) (holding that ERISA claims were subject to arbitration after determining that the ERISA claims fell within scope of agreement); *Simon v. Pfizer Inc*., 398 F.3d 765, 774-75 (6th Cir. 2005) (collecting cases holding that ERISA claims are subject to arbitration under FAA); *Duke*

---

question that a court resolving a motion to compel arbitration is not constrained to consider only the allegations of plaintiff's complaint. Indeed, the court is obligated … to consider affidavits and other evidence of a type that would be submissible at the summary judgment stage." *Powers v. Charles River Lab'ys, Inc*., 2017 WL 4324942, *4 (E.D. Mich. Sept. 29, 2017); *Andrews v. TD Ameritrade, Inc*., 596 F. App'x 366, 371 (6th Cir. 2014) (affirming district court's resolution of defendant's motion to compel arbitration and rejecting plaintiff's argument that the district court erred in relying on affidavits and agreements that were outside the pleadings). Accordingly, the Court may consider Plaintiff's Arbitration Agreements with Dollar General for purposes of ruling on the instant Motion.

*v. Luxottica U.S. Holdings Corp.*, 2024 WL 4904509, \*15 (E.D.N.Y. Nov. 27, 2024) (compelling the plaintiff's ERISA § 502(a)(3) claims into individual arbitration).

### A.  Plaintiff Should Be Compelled To Arbitrate Her ERISA § 502(a)(3) Claims

To compel arbitration, a court must conclude that: (1) the parties agreed to arbitrate the claims at issue; and (2) Congress intended those claims to be arbitrable. *Gavette v. United Wholesale Mortg., LLC*, 2025 WL 318224, at \*1 (6th Cir. Jan. 28, 2025). Where, as is the case here, both inquiries are answered in the affirmative, the court must require arbitration.

### 1.  The Parties Agreed To Arbitrate Plaintiff's ERISA § 502(a)(3) Claims

Plaintiff and Dollar General agreed to arbitrate "Covered Claims" as evidenced by the written Arbitration Agreements attached to the Declaration of Debbie Roach. *See* Ex. 1. Plaintiff's ERISA § 502(a)(3) claims fall within the broad scope of disputes included in the definition of "Covered Claims" that she contractually agreed to arbitrate. "Covered Claims" include "any legal claims or disputes that [she] may have against Dollar General…., [its] employees, officers and directors arising out of [her] employment with Dollar General or termination of employment with Dollar General." *See id*. The definition of "Covered Claims" includes claims brought under any federal law. *Id.* ERISA claims clearly arise under federal law.

"Once prima facie evidence of the agreement has been presented, the burden shifts to the party opposing arbitration" to show that the arbitration agreement is invalid or that her claims are beyond its scope. *Foust v. Comcast Corp.*, 2020 WL 1891755, \*4 (E.D. Tenn. Jan. 28, 2020); *see also Merritt v. Square Cap., LLC*, 2024 WL 4183316, \*4 (W.D. Tenn. July 25, 2024) ("the burden then shifts to [the party opposing arbitration] to show that the arbitration agreement is invalid or that his claims are beyond its scope").

Any challenge to the validity or scope of the Arbitration Agreement by Plaintiff will be unsuccessful. For example, any challenge that the claims do not fall within the scope of the

Arbitration Agreement because they are not related to Plaintiff's employment with Dollar General will fail as courts have repeatedly found that ERISA claims stem from an employment relationship. *See, e.g., Rowe v. ZF N. Am., Inc.,* 2021 WL 3036787, *6 (N.D. Ohio July 19, 2021) (finding that plaintiff's "ERISA claims are inextricably linked to his employment relationship"); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 2017 WL 3524682, *3 (S.D.N.Y. Aug. 15, 2017) (holding that plaintiff's ERISA fiduciary breach claims "arose out of, . . . or related to, his employment" and were arbitrable even though arbitration agreement did not "expressly" identify such claims); *Williams v. Imhoff*, 203 F.3d 758, 766 (10th Cir. 2000) (finding that plaintiffs' ERISA fiduciary breach claims arose out of their employment, in part, because they "were entitled to purchase company stock [through the ERISA-governed employee stock ownership plan] . . . solely as a result of their employment"); *Murphy v. Canadian Imperial Bank of Commerce*, 709 F. Supp. 2d 242, 246 (S.D.N.Y. 2010) (explaining that the ERISA claim was "clearly related to [plaintiff's] employment" and "falls squarely within scope" of arbitration provision); *Fusco v. Plastic Surgery Ctr., P.A.*, 2016 WL 845263, at *1 (D. Me. Mar. 4, 2016) ("Certainly [plaintiff's] rights concerning the profit sharing plan derive from her employment relationship with [defendant employer]").

Any claim that the Arbitration Agreement lacked sufficient consideration will also fail because mutual forbearance of the right to sue in an employment agreement constitutes sufficient consideration for an arbitration agreement. *See Aldrich v. Univ. of Phoenix, Inc.*, 661 F. App'x 384, 390-91 (6th Cir. 2016). Here, both Plaintiff and Dollar General agreed to arbitrate any legal claims or disputes they may have against each other relating to Plaintiff's employment. *See* 12/9/23 Arbitration Agreement at 1, attached as Ex. B to the Roach Decl. As such, the Arbitration Agreement is supported by sufficient consideration.

### 2. *Congress intended for Plaintiff's ERISA claims to be arbitrable*

"As every circuit to consider the question has held, ERISA contains no congressional command against arbitration." *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513–14 (9th Cir. 2019) (citing *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000) and *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996)); *Simon*, 398 F.3d at 774-75 (collecting cases to support ERISA claims are subject to arbitration under FAA); *Duke*, 2024 WL 4904509, at *15 compelling the plaintiff's ERISA § 502(a)(3) claims into individual arbitration). Because nothing in ERISA displays a clearly expressed congressional command against arbitration, the Arbitration Agreement should be enforced.

### B. Arbitration Should Be Compelled On An Individual Basis

When determining whether claims should be submitted to arbitration on an individual or class-wide basis, the default rule is that claims are arbitrated on an individual basis. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) (enforcing class action waiver because "courts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent"). The Supreme Court has explained that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Stolt-Nielsen S.A. v. AnimalFeeds, Int'l Corp.*, 559 U.S. 662, 684 (2010); *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 553 (6th Cir. 2016) ("An agreement must expressly include the possibility of classwide arbitration for us to conclude that the parties agreed to it.").

Here, there is no agreement to arbitrate on a class-wide, group, or representative basis. To the contrary, Plaintiff and Dollar General expressly agreed that they "may not assert any class action, collective action, or representative action claims in any arbitration pursuant to this Agreement or in any other forum." *See* Roach Decl. at Ex. B, 12/9/23 Arbitration Agreement at

1. Since the provision waiving class-wide or representative arbitration must be enforced according to its terms, the arbitration must be conducted on an individualized basis. *See, e.g., Epic Systems*, 138 S. Ct. at 1632 (recognizing that the FAA requires "federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings").

### C.     The Lawsuit Should Be Stayed Pending Arbitration

When a motion to compel is granted, Section 3 of the FAA and the Supreme Court require that judicial proceedings be stayed until such time as the arbitration proceedings are complete. *See* 9 U.S.C. § 3 (requiring court to issue a stay upon compelling arbitration); *Smith v. Spizzirri*, 601 U.S. 472, 477-478 (2024) (explaining that a stay is required when a motion to compel arbitration is granted); *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380 (6th Cir. 2021) (district court erred in not staying case when compelling arbitration); *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941 (6th Cir. 2021) (explaining that Section 3 of the FAA renders a stay a "mandatory obligation").

## V.     CONCLUSION

For these reasons, Dollar General respectfully requests that Plaintiff's ERISA  § 502(a)(2) claims be dismissed.  Dollar General further requests that Plaintiff's ERISA § 502(a)(3) claims be compelled into individual arbitration and that these proceedings be stayed pending resolution of the arbitration. Finally, Dollar General requests that it be awarded its attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

Dated: October 1, 2025                    Respectfully submitted:


                                          */s/ Todd D. Wozniak*
                                          Stanley E. Graham (TN Bar No. 019788)
                                          HOLLAND & KNIGHT LLP
                                          511 Union Street, Suite 2700
                                          Nashville, TN 37219
                                          Tel:    615-244-6380
                                          Fax:    615-244-6804
                                          stan.graham@hklaw.com

                                          Lindsey R. Camp, Esq. (admitted *PHV*)
                                          HOLLAND & KNIGHT LLP
                                          777 South Flagler Drive, Suite 1900, West Tower
                                          West Palm Beach, FL 33401
                                          Tel:    561-833-2000
                                          Fax:    561-650-8399
                                          lindsey.camp@hklaw.com

                                          Todd D. Wozniak, Esq. (admitted *PHV*)
                                          HOLLAND & KNIGHT LLP
                                          1180 West Peachtree Street NW, Suite 1800
                                          Atlanta, GA 30309
                                          Tel:    404-817-8500
                                          Fax:    404-881-0470
                                          todd.wozniak@hklaw.com

                                          *Counsel for Defendant Dollar General Corporation*

22

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on October 1, 2025, a true and correct copy of the foregoing has been

served via the Court's CM/ECF system upon:

Kimberly Dodson, Esq.
Oren Faircloth, Esq.
Siri & Glimstad LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
kdodson@sirillp.com
ofaircloth@sirillp.com

R. Scott Pietrowski
Siri & Glimstad LLP
4780 I-55 North, Suite 100
Jackson, MS 39211
spietrowski@sirillp.com

*Attorneys for Plaintiff*

/s/ Todd D. Wozniak